UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Laborer's District Council
Pension Fund for Baltimore
and Vicinity; and James L.
Fisher, Trustee,
    Plaintiffs

    v.                                        Civil No. 05-cv-144-SM
                                              Opinion No. 2007 DNH 022
Daniel J. Regan,
    Defendant

## O R D E R

Laborers' District Council Pension Fund for Baltimore and Vicinity ("Laborers'" or "the Fund"), and its trustee, James L. Fisher, bring this suit against Daniel J. Regan to recover pension benefits paid to Regan, but to which he was allegedly not entitled. Count I is based upon a restitution theory of recovery and Count II on unjust enrichment.

Laborers' moves for summary judgment. For the reasons set forth below, Laborers' motion is denied.

### The Legal Standard

Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(C).  In considering a motion for summary judgment, the court must view the record "in the light most hospitable" to the nonmoving party.  <u>Euromodas, Inc. v. Zanella, Ltd.</u>, 368 F.3d 11, 17 (1st Cir. 2004) (citing <u>Houlton Citizens' Coalition v. Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999); <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990)).  An issue is "'genuine' if the parties' positions on the issue are supported by conflicting evidence."  <u>Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 200 (1st Cir. 1996) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)).  An issue is "'material' if it potentially affects the outcome of the suit."  <u>Id.</u> at 199-200.

In support of its summary judgment motion, the moving party must "identify[] those portions of [the record] which . . . demonstrate the absence of a genuine issue of a material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party successfully demonstrates the lack of a genuine issue of material fact, "the burden shifts to the nonmoving party . . . to demonstrate that a trier of fact reasonably could find in [its] favor."  <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997) (citing <u>Celotex</u>, 477 U.S. at 322-25).  Once the burden

2

shifts, the nonmoving party "may not rest upon mere allegation or denials of his [or her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

## Background

The facts, described in the light most favorable to Regan, are as follows.

Regan, a construction worker, joined the International Laborers' Union ("the Union") in 1966 and remained a member until 1986. During that time he participated in the Union's retirement benefits plan, administered by the Fund and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a) ("ERISA"). In August of 2003, Regan applied for early retirement benefits. The Fund completed a Pension Application Worksheet and determined that Regan was entitled to a one-time payment of $3,482.02.

Regan subsequently received an election form that noted he would receive a "lump sum payout" of his pension entitlement. The form also required Regan to indicate whether he wanted to roll over his pension benefit into another retirement account,

explaining that a cash payout would be subject to a 20% federal income tax withholding.  Regan signed and returned the form, opting for the cash payout.

On October 1, 2003, the Fund issued a check in the amount of $2,785.62, representing Regan's pension benefit less withholding of $696.40, which amount was remitted to the Internal Revenue Service ("IRS").  Due to an administrative error, Regan also received monthly checks for the same amount, beginning on November 1, 2003, and continuing until July 2004, when the error was discovered and corrective action taken.  Over the nine-month period the Fund paid $31,338.18 on Regan's behalf ($25,070.58 was paid to Regan directly, while the remaining $6,267.60 was remitted to the IRS).

On July 30, 2004, Regan was formally notified by letter of the error.  The letter requested Regan to repay, or make arrangements to repay, the full value of the erroneous disbursements by September 1, 2004.  Regan refused to pay and this suit followed on April 22, 2005.

**Discussion**

Laborers' moves for summary judgment asserting that "it cannot be disputed that an overpayment was made to Regan." (Pl.'s Mot. Summ. J. 4.)  Regan objects to summary judgment, but does not vigorously contest that the monthly payments were made in error.[1]  Regan also does not contest that, under the plan, the Fund has a <u>legal</u> right to seek reimbursement.  Instead, he challenges the propriety of equitable relief, claiming, essentially, that requiring him to repay the amount of the overpayment would be unfair at this point because he has detrimentally changed his position (spent the money) based upon reasonably relying upon the fact that the Fund correctly determined that he was due the money that it sent him.

Under 29 U.S.C. § 1132(a)(3)(A) a fiduciary of an ERISA-governed plan is authorized to obtain "other appropriate

---

[1] At page 5 of his objection to the Fund's Motion for Summary Judgment, Regan explains that "[a]s an ordinary individual, [he] is not confident that he was paid the correct benefits or not.  Consequently, he demands proof that he was actually overpaid."  Regan also notes that the amount of the alleged overpayment is in dispute "as [Regan] believes [the Fund] has collected $6,267.60 in alleged overpayments by filing a corrected 1099 form for the 2003 tax year and failing to send the withholding taxes to the IRS for the 2004 tax year."  Aside from these two passing and unsupported references, the objection focuses exclusively on the issue of whether the Fund is entitled to recover the erroneous payments.

equitable relief." As explained in Tynan v. Am. Airlines, Inc. Pilot Ret. Benefit Program, 2005 DNH 127, *10-11 (D.N.H. 2005), the scope of this court's equitable authority in an ERISA context is not well-defined. It would appear, however, that injunctive relief of the type that plaintiff seeks is available. See generally Mertens v. Hewitt Assocs., 508 U.S. 248 (1993) (narrowly interpreting the phrase "other appropriate equitable relief," as used in 29 U.S.C. § 1132(a) to include only "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution . . . ).") (emphasis in original). See also Wells v. U.S. Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1251 (6th Cir. 1991) ("Although the Plan language permits recoupment, this court is concerned with the possible inequitable impact recoupment may have on the individual retirees. . . . We thus remand this case to the district court to consider whether, under principles of equity or trust law, relief is unwarranted); Butler v. Aetna U.S. Healthcare, Inc., 109 F. Supp. 2d 856, 862 (S.D. Ohio 2000) ("[W]ithout question, the plan grants [defendant] a legal right to withhold [plaintiff's] entire monthly benefit award until it recoups the overpayment caused by her retroactive receipt of Social Security Disability benefits . . . [H]owever, . . . equitable principles may limit an ERISA fiduciary's legal right

equitable relief." As explained in Tynan v. Am. Airlines, Inc. Pilot Ret. Benefit Program, 2005 DNH 127, *10-11 (D.N.H. 2005), the scope of this court's equitable authority in an ERISA context is not well-defined. It would appear, however, that injunctive relief of the type that plaintiff seeks is available. See generally Mertens v. Hewitt Assocs., 508 U.S. 248 (1993) (narrowly interpreting the phrase "other appropriate equitable relief," as used in 29 U.S.C. § 1132(a) to include only "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution . . . ).") (emphasis in original). See also Wells v. U.S. Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1251 (6th Cir. 1991) ("Although the Plan language permits recoupment, this court is concerned with the possible inequitable impact recoupment may have on the individual retirees. . . . We thus remand this case to the district court to consider whether, under principles of equity or trust law, relief is unwarranted); Butler v. Aetna U.S. Healthcare, Inc., 109 F. Supp. 2d 856, 862 (S.D. Ohio 2000) ("[W]ithout question, the plan grants [defendant] a legal right to withhold [plaintiff's] entire monthly benefit award until it recoups the overpayment caused by her retroactive receipt of Social Security Disability benefits . . . [H]owever, . . . equitable principles may limit an ERISA fiduciary's legal right

to recoup an overpayment of benefits.") (emphasis in original). So, for purposes of resolving plaintiff's claim, the court assumes that it has the equitable authority to determine whether the Fund may recover the excess payments made to Regan.

The Fund correctly points out that, generally speaking, "[w]hen a trustee overpays a beneficiary the trustee is entitled to recover the excess payment, even when it was the product of unilateral mistake on the part of the trustee." Hoffa v. Fitzsimmons, 673 F.2d 1345, 1354 (D.C. Cir. 1982). But, as Regan notes, "such recovery may not be permitted where the beneficiary has changed his position in detrimental reliance on the correctness of the overpayment; in such cases the beneficiary is entitled to retain part or all of the overpayment to the extent necessary to avoid injustice." Id. at 1354 n. 27. There appears to be no dispute that Regan changed his position in reliance on the correctness of what turned out to be a series of overpayments. The outcome of this motion thus turns on whether Regan reasonably believed that he was entitled to the payments he received.

The Fund asserts that Regan knew or should have known that the excess payments were erroneous, because the amount was

incommensurate with the 2.8 years of work he had performed under the Union's Baltimore local.  Regan, however, says he was applying for reciprocal pension benefits based upon not only his 2.8 years of work in Baltimore, but all laboring work he performed over some twenty years, irrespective of location, falling within the Union's jurisdiction.

   The Fund invokes this court's opinion in Tynan as support for its position.  Tynan invoked a pension plan beneficiary who sought to enjoin the plan's administrator from collecting overpayments he received over a six year period.  2005 DNH 127, *4.  Tynan argued, just as Regan argues, that he reasonably believed he was entitled to the full amount of each check he received.  Id. at *9.  This court found Tynan's asserted belief to be legally unreasonable, because he had been notified, in writing, of the precise amount of his anticipated monthly pension benefit and he had been paid the proper amount during the first month of his retirement, after which the higher, erroneous payments began.  Id. at *12.  That sudden change in payment amount, the court determined, "could not have escaped [Tynan's] notice."  Id.

Regan was also notified in writing of the amount of his pension, as well as the fact it would be a "lump sum payout." But unlike Tynan, the written communication between Regan and the Fund was complicated by the Fund's continued use of "reciprocal benefits" language. In 1994, for example, Regan received a letter from the Fund indicating that, upon retirement, the Fund would "work up a reciprocal pension benefit" for him. (Def.'s Mot. Opp. Summ. J., Ex. 3.) Such correspondence allegedly encouraged Regan to believe that the benefits for which he applied would be based on not only upon his laboring work in Baltimore, but also on the entirety of his service under the Union's jurisdiction — approximately twenty years of work.

Moreover, Regan prepared an estimate of his entitlement and determined that over the period during which he worked in the Baltimore jurisdiction, $10,295 had been contributed to the Fund on his behalf, which, he concluded, should have "increased in value to over $50,000" by the time the erroneous payments were made. (Regan Aff. ¶ 21.)

The Fund disputes both Regan's calculations and his interpretation of the "reciprocal benefits" language, pointing out that he was already receiving pension benefit payments from a

9

Massachusetts pension fund that took into account 11.75 years of service that Regan now claims should be included in determining the value of his pension benefits from the Fund.  The Fund also explains that Regan's calculations are inaccurate because they are based on erroneous numbers that do not accurately reflect the economic relationship between the Fund's contributions and distributions.

But even if Regan's calculations are inaccurate, the mere fact that he may have prepared the estimate suggests that he may have reasonably believed that he was entitled to the erroneous payments.  So, while there was "[n]othing in [Tynan's] filings, except his general denial of any knowledge of the error . . . ," Tynan, 2005 DNH 127, *12, here Regan plainly states that he did not recognize the overpayments as erroneous because his interpretation of the reciprocity arrangement between Union locals, and his own, albeit rudimentary, calculations, led him to believe his benefit entitlement was consistent with the amount she was receiving.

Put simply, Regan is a construction laborer afflicted with medical and mental challenges, (Def.'s Obj. Mot. Summ. J., Ex. 11), he is unversed in the complexities of pension plans or

benefits administration.  When he contacted Laborers' seeking clarification of his pension entitlement, he was advised that he would be entitled to a reciprocal pension, from which says he inferred that his total benefit would reflect the totality of his union work experience, and not merely the 2.8 years he worked in the Baltimore locale.  As a result of communications from Laborers' as well as his own calculations, Regan says he honestly believed he was entitled to the payments that he received, and, has now altered his position to the point that repayment would be inequitable.  Whether that belief was reasonable under the circumstances poses a question of material fact – one that is genuinely disputed, and, therefore, precludes summary judgment.  Accordingly, the Fund's motion for summary judgment is denied.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment (document no. 10) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 20, 2007

cc:  William D. Pandolph, Esq.
     Janine Gawryl, Esq.